Nos. 2-23-0242 & 2-23-0243 cons.
Order filed February 15, 2024

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* V.C. & L.S., Minors OF ILLINOIS, | ) ) ) ) ) ) ) | Appeal from the Circuit Court of De Kalb County.<br><br>Nos.   20-JA-59<br>          20-JA-60 |
| (The People of the State of Illinois, Petitioner-Appellee v. Jenna C., Respondent-Appellant). | ) ) ) | Honorable Sarah Gallagher Chami, Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Presiding Justice McLaren and Justice Jorgensen concurred in the judgment and opinion.

**ORDER**

¶ 1    *Held*: We lack jurisdiction over respondent's contentions regarding the permanency review hearings and the orders entered thereafter, and we dismiss this portion of respondent's appeal.  Respondent failed to demonstrate prejudice arising from the trial court's denial of her motion to represent herself.

¶ 2    Respondent, Jenna C., appeals the judgment of the circuit court of De Kalb County determining her to be unfit and terminating her parental rights to her minor children, V.C. and L.S. Following the trial court's determination that she was unfit, but before the court held the best-interests hearing, respondent filed a motion to discharge her appointed attorney and represent herself.  Respondent challenges the orders following permanency review hearings for failing to explain the reasons for the court's selection of the permanency goals, and she contends that two of the permanency review hearings were conducted beyond the statutory six-month deadline. Respondent further argues on appeal that the trial court erroneously deprived her of her right to

self-representation by denying her motion, contending only that the matter should be remanded to allow the court to properly consider her request to represent herself. We dismiss in part for lack of jurisdiction and affirm in part.

¶ 3                              I. BACKGROUND

¶ 4      We summarize the relevant facts appearing in the record. On October 10, 2020, the Department of Children and Family Services (Department) took protective custody of V.C. and L.S. when respondent was hospitalized as she experienced a mental health crisis. Thereafter, on October 14, 2020, the State filed a petition to adjudicate the minors neglected. Respondent retained private counsel, and, on December 4, 2020, the trial court entered a temporary custody order placing the minors under the temporary custody and guardianship of the Department.

¶ 5      On January 15, 2021, respondent's private counsel withdrew, and a public defender was appointed to represent respondent. On February 3, 2021, respondent again retained new private counsel, and, on February 22, 2021, the trial court continued the matter for an adjudicatory hearing, finding that good cause existed for the extension of the time frames to conduct the hearing.

¶ 6      On April 16, 2021, the trial court entered an order adjudicating the minors to be neglected. Specifically, the court determined that the minors were in an environment injurious to their welfare because respondent was taking medication to treat attention deficit disorder (ADD) without a prescription, resulting in a risk of harm. See 705 ILCS 405/2-3(1)(b) (West 2020).

¶ 7      In a May 6, 2021, court appointed special advocate (CASA) report, the caseworker reported that respondent had not cooperated with any offered services and had tested positive for opiate, amphetamine, methamphetamine, and cannabis metabolites. Respondent was, however, consistently exercising visitation with the children. On May 10, 2021, the trial court entered a dispositional order finding respondent unfit for other than financial reasons, and the minors were

placed in the custody of the Department. In June 2021, respondent's attorney withdrew from representing her, and the public defender was reappointed to represent respondent.

¶ 8    In a July 28, 2021, CASA report, the caseworker noted that respondent was uncooperative, had not been amenable to telephone contact, and had not cooperated in creating a service plan despite the caseworker's clear admonitions that respondent's parental rights could be terminated if she persisted in refusing to cooperate with services. Respondent continued to consistently exercise her weekly supervised visitation with the minors but believed that the Department should not have taken the minors. Respondent also indicated that she planned to " 'appeal everything' " even if she had to represent herself.

¶ 9    On October 20, 2021, the Department filed a service plan dated October 5, 2021. The caseworker recounted that, in May 2021, the minors had been removed from their placement with V.C.'s paternal grandmother and instead had been placed in traditional foster care because respondent engaged in harassing conduct against the grandmother by filing "multiple unfounded" reports with the Department. On July 12, 2021, the caseworker met with respondent and reviewed the service plan with her. Respondent refused to sign consent forms to allow access to records of the services in which she was supposed to engage. As of the October 5 service plan, respondent had been scheduled for 17 drug tests, had completed 4 of the tests, and had tested positive for the presence of opiate and amphetamine metabolites in all the drug tests she completed. Respondent was rated as unsatisfactory for all the recommended services because she refused to cooperate with the Department.

¶ 10    On October 25, 2021, the first permanency review hearing was begun. The hearing was continued until December 3, 2021.

¶ 11    On December 1, 2021, CASA filed a report with the trial court. The report indicated that, in October, respondent participated in a meeting with the caseworker and several of respondent's

friends or family members, with the purpose of clarifying the expectations about respondent's participation in the recommended services described in respondent's service plan. Respondent indicated that she was frustrated by the Department's involvement and fearful that, if she signed the consent forms, she would " 'sign away my rights to my kids.' " Following the October meeting, respondent continued to be uncooperative and persisted in her refusal to sign the consents or releases. CASA recommended that the goal be return home, with respondent to comply with the recommendations of the service plan.

¶ 12    On December 3, 2021, the continued permanency hearing resumed. The trial court found that respondent had not made reasonable efforts to follow the service plan and achieve the goal of returning the minors home and to parental custody. The court set the goal for return home within 12 months.

¶ 13    The next status reports, from CASA and from Lutheran Social Services of Illinois (Lutheran), and dated March 2022, indicated that respondent remained uncooperative. She had not provided consents or releases to allow the agencies access to the records of the services she was undertaking. Thus, although respondent reported that she was engaged in services, the reports went unconfirmed. Likewise, respondent continued to be uncooperative with drug testing, having been referred to a total of 23 tests and having completed only 5. All the completed tests revealed amphetamine metabolites.

¶ 14    On May 31, 2022, Lutheran filed a permanency hearing report which noted that, in March 2022, respondent went to the emergency room complaining of pain and requesting medication. Testing for sources of the pain was negative, and respondent "walked out of the [emergency room] in a hurry, in no acute distress." Respondent had signed the various consents necessary to allow the agency access to her records, and they showed that she was prescribed Adderall and codeine-based pain reliever.

¶ 15    Also on May 31, 2022, the Department filed a family service plan dated April 2022. The Department rated respondent's progress in the recommended services as unsatisfactory. On June 9, 2022, CASA filed a report to the court noting that respondent continued to be uncooperative, but had begun to engage in services, like substance abuse assessment, individual counseling, parenting education, and domestic violence services. Respondent was also consistently exercising her visitation.

¶ 16    On June 10, 2022, the trial court held a permanency hearing. The court found that, while respondent had made reasonable efforts to follow the service plan, she had made neither reasonable efforts nor progress in reaching the permanency goal of return home. The court maintained the goal of return home within 12 months.

¶ 17    In July 2022, respondent reported that she was engaging in the recommended services but, because she had not provided consents or releases, the agencies were unable to verify many of her representations. The presence of amphetamine metabolites in her drug tests continued to be a concern as she denied improper use of medications. Specifically, in August 2022, respondent provided an office visit summary from her urologist in which she denied taking high doses of Adderall and maintained that the metabolite levels remained high even when not taking her prescription medications. Respondent was concerned that the high levels may have been due to her kidneys failing to filter the drugs very well. The doctor explained this was unlikely because respondent's kidney function had always been normal.

¶ 18    On October 14, 2022, the State filed a motion to terminate respondent's parental rights, and she was arraigned on the motion in the trial court. On December 8, 2022, the Department filed a motion to hold a permanency hearing, and on December 19, 2022, the court began and continued the permanency hearing requested by the Department.

¶ 19    Lutheran submitted an updated hearing report before the permanency hearing commenced. The caseworker noted that respondent was finally communicating with the agency, but the communications were defensive, blaming the agency and caseworker for the removal of the children and the failure to have restored the children to respondent's care.  The caseworker related that she never met with respondent by herself; she brought along another person to avoid false accusations from respondent.

¶ 20    The caseworker reported that respondent demonstrated a lack of understanding of the impact of parental substance abuse on the children by her continued denial of any substance abuse problems despite the positive test results for amphetamine metabolites, methamphetamine metabolites (which was an unexpected result indicative of possible substance abuse), and respondent's failure to appear for drug testing scheduled by Lutheran since November 24, 2021. Respondent's housing arrangements were stable, and respondent reported that, in November 2022, she secured employment with a department store as an area supervisor or manager.  Respondent had also completed some of the assigned services from her service plan, such as substance abuse services, about which the caseworker reported significant discrepancies with respondent's assertions regarding her use of Adderall and similar substances.  In addition, respondent had undertaken individual therapy which fulfilled her domestic violence service plan requirements, and respondent had completed a parenting course and was recommended further parenting education due to issues arising during her visitation with the children.

¶ 21    Regarding visitation, the caseworker reported that, while respondent consistently exercised her visitation, she was not good at disciplining the children, bribing them instead of setting clear boundaries to obtain the desired behaviors.  Respondent also undercut the foster parent and agitated and upset the children by telling them that the foster parent was not their "Mommy," and they would soon be permanently reunited with respondent.

¶ 22    The caseworker concluded that the prognosis for reunification between respondent and the children was poor. The caseworker advised that respondent had not made reasonable progress on her services and had failed to modify her behaviors, continuing to engage in behaviors that were unsafe and unsuitable for young children. The caseworker recommended that the permanency goal for the children be changed to substitute care pending the termination of respondent's parental rights.

¶ 23    The Department also submitted a family service plan dated September 30, 2022, before the beginning of the permanency review hearing. The Department noted that respondent was cooperating and had completed some of the recommended services. Respondent's lack of cooperation hindered her efforts and compliance with some of the substance abuse and mental health services, and the Department rated her progress to be unsatisfactory for many of the core services respondent was recommended to complete.

¶ 24    On January 6, 2023, the trial court conducted an unfitness hearing in which the caseworker and respondent both testified. The court continued the matter to February 17, 2023, for ruling, and also scheduled a January 27, 2023, continuation of the permanency hearing previously begun in December 2022.

¶ 25    On January 27, 2023, the trial court concluded the permanency review hearing. The court determined that respondent had made neither reasonable efforts nor progress in achieving the goals of her service plan. It changed the goal from return home to substitute care pending determination of the motion to terminate respondent's parental rights in orders dated January 27, 2023, and February 8, 2023, *nunc pro tunc* to January 27, 2023 (correcting a scrivener's error in the January 27 order).

¶ 26    On February 17, 2023, the trial court pronounced its judgment regarding the unfitness hearing. The court noted that respondent had only reluctantly cooperated with the Department,

and this significantly delayed her beginning to undertake the recommended services. As an example, the court highlighted that the case began in October 2020, a shelter care hearing for the minors was conducted in December 2020, respondent's initial assessment was conducted in January 2021, and she refused to sign consent forms until December 2021. The court also noted that respondent did not complete her substance abuse assessment until May 2022, which was only the first step in that service, and she finished the eight sessions of the substance abuse program in August 2022. The court further noted that many services remained outstanding, such as individual counseling, while other requirements, such as drug testing, were mainly refused. The court concluded that the State proved by clear and convincing evidence that respondent was unfit as alleged in all counts of the motion to terminate respondent's parental rights.

¶ 27    On March 10, 2023, respondent filed a *pro se* motion to dismiss her appointed attorney and to represent herself. In her motion, respondent stated:

> "I have reached out to my lawyer numerous times since he was appointed, I have only received a few responses and he is not fulfilling his duty as my attorney. I unfortunately feel I can no longer be represented by him in this case. I have asked to have motions filed, requested answers and help with the case. No response. I need to be able to show my proof and all my progress made. I ask for this motion and court date today to let the courts know I am now going to be representing myself *pro se*."

Respondent also attached to the motion a 10-page exhibit which described her parenting philosophy and her commitment to her children, and which contained photographs depicting respondent interacting with the children.

¶ 28    On March 24, 2023, the trial court heard respondent's motion. The court denied respondent's motion, commenting that, at the outset of the case in October 2020, respondent had retained counsel who withdrew, counsel was appointed, and then, in February 2021 respondent

again retained counsel who withdrew in May 2021, and her current attorney was appointed and represented her throughout the balance of the proceedings. The court explained that counsel was appointed in May 2021 due to the "significance" of the rights involved in the proceedings, and the appointment was pursuant to section 1-5 of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1-5 (West 2022)). The court further reasoned:

> "In addition, the counsel which you have currently been appointed, Mr. Johnson, is an appointed counsel. He is not a counsel that you have hired. Where in the past you have hired counsels and they have either withdrawn because of a mutual understanding between you; I don't know if you fired them. I don't know what the situation is, and I'm not making that request at this time, but as he was appointed, where you hired someone and maybe fired them, he was appointed so you can't fire him at this point in time.
>
> So at this time, your motion to represent yourself is going to be denied."

¶ 29    Respondent asked to make additional comments, which the court allowed. Respondent stated that she wanted to show proof that she had made progress with the recommended services, but her attorney had not submitted the documentation. Respondent also stated that she wanted her attorney to file a motion to reconsider, but he did not, and she did not believe he was "fighting for me and my children." Respondent concluded that the "only reason why I want him fired from my case [is] so I can file my paperwork and documents to show all of my progress."

¶ 30    The trial court responded:

> "I do have specific recollection that Mr. Johnson has filed motions, has cross-examined witnesses, has submitted documentation in those hearings on your behalf.
>
> You are also well aware that you have the opportunity to hire private counsel if you have the funds to do so and have them come in if you would choose to have another lawyer.

If you do not have the funds to do so and thus you are an indigent person, that is then where we have an attorney that is appointed for you.

You have indicated that you attempted to file a motion to reconsider on your own, which you would need leave of Court to do. I don't know why it was or was not successful as you obviously are well aware of how to file motions in this case, but at this point and where we are at in the case Mr. Johnson is a well-seasoned attorney, not only in practice a number of years but in this particular courtroom and area of law.

As I said, I myself have even in the short time I've been on this case for the length of time it's been in court have seen Mr. Johnson, as I said, cross-examine witnesses, present arguments on your behalf, so I'm not going to accept any further argument. I've given you the opportunity now twice to make your statement, and your motion to represent yourself is going to be denied. Thank you."

¶ 31 The matter advanced to the best interests hearing. The record indicates that, on April 17, 2023, the best interests hearing commenced, but no transcript of the hearing appears in the record. On June 2, 2023, the best interests hearing resumed. Respondent's counsel introduced the documents that respondent stated she wanted to be introduced. These documents related to respondent's concerns, stated in her motion to represent herself and at the hearing on it regarding demonstrating to the trial court that she had made progress with the recommended services as well as showing "who she is as a mother to her children and where she is [as a mother] today." On July 17, 2023, the court terminated respondent's parental rights.

¶ 32 Respondent timely appeals.

¶ 33                                    II. ANALYSIS

¶ 34 On appeal, respondent does not challenge the substance of the trial court's unfitness and best interests findings. Instead, respondent contends that the trial court did not comply with the

Act by stating the reasons the various permanency goals were selected following the permanency review hearings. In addition, respondent also contends that the court failed to comply with the Act because "multiple" but unidentified permanency review hearings were held outside of the six-month time limit set forth in section 2-28(2) of the Act (705 ILCS 405/2-28(2) (West 2022)). Finally, respondent argues that the trial court abused its discretion in refusing to honor her clear and unequivocal request to represent herself following the unfitness hearing and before the commencement of the best interests hearing. We address these contentions in turn.

¶ 35                            A. Permanency Orders

¶ 36    As an initial matter, we note that permanency orders are not final orders because they are to be reviewed and modified every six months until the goal is achieved. *In re Curtis B.*, 203 Ill. 2d 53, 59-60 (2002). They are therefore not appealable as of right as a final order; instead they are permissibly appealable interlocutory orders governed by Illinois Supreme Court Rule 306(a)(5), (b) (eff. Oct. 1, 2020). Specifically, a party is required to petition for leave to appeal within 14 days of the permanency order the party is seeking to appeal. Ill. S. Ct. R. 306(b)(1) (eff. Oct. 1, 2020). No petition for leave to appeal any permanency order appears in the record. Further, on July 17, 2023, respondent filed a notice of appeal; the most recent permanency order filed by the trial court bears a date of February 8, 2023. To appeal the February 8, 2023, permanency order, respondent would have needed to file a petition for leave to appeal that order no later than February 22, 2023. Even deeming respondent's July 17, 2023, notice of appeal as a petition for leave to appeal under Rule 306, it was filed nearly five months after the time limit for appealing a permanency order. We are therefore without jurisdiction to consider the propriety of any of the permanency orders entered by the trial court in this case.

¶ 37    Moreover, once the trial court has adjudicated the issue of the termination of parental rights, the interlocutory permanency orders become irrelevant and nonjusticiable. *In re Jordan F.*, 344 Ill. App. 3d 1057, 1066-67. Specifically,

"once parental rights have been terminated, [we] will not delve into and review the trial court's preliminary determinations in [respondent's] case. At this point in the proceedings, the only order subject to review is the court's finding on the termination petition. We acknowledge that consideration of such preliminary orders should be considered on review to the extent that those orders adversely affected respondent's ability to make reasonable progress, [only] if such evidence was considered by the trial court during the termination proceedings. However, beyond any effect that such interlocutory orders may have had on the ultimate issue before us—namely, whether the trial court erred by determining that the State proved its termination petition by clear and convincing evidence—they are irrelevant and not justiciable." *Id.*

¶ 38    Because respondent does not challenge the ultimate issue of whether the State proved its motion to terminate respondent's parental rights by clear and convincing evidence, the interlocutory permanency orders became irrelevant and nonjusticiable. Accordingly, we do not address the merits of respondent's contentions regarding the propriety of the trial court's explanations for the goals set in the permanency orders. We further note that such improprieties in permanency orders are properly addressed under the procedures set forth in Rule 306(b), and as those procedures were not observed, we lack jurisdiction to consider the orders on appeal.

¶ 39    Respondent suggests that the trial court's failure to comply with the requirement, pursuant to section 2-28 of the Act (705 ICS 405/2-28 (West 2022)), of providing a written explanation of the problems causing the continued placement of the children away from her home and written identification of the outcomes that would resolve those problems impeded her ability to understand

the reasons for the recommended services and to make reasonable progress in those services. Even though *Jordan F.*, 344 Ill. App. 3d at 1066-67, implied that the interlocutory permanency orders could be properly reviewed despite the entry of an order terminating parental rights if the permanency orders adversely affected the party's ability to make reasonable progress, respondent does not challenge the trial court's findings regarding either unfitness or the minors' best interests. This means that she cannot establish the necessary link between the ultimate issue of the termination of parental rights and the permanency orders which, under *Jordan F.*, could have arguably allowed us to review those orders as necessary steps toward the final order terminating parental rights. Thus, the permanency orders remain irrelevant and not justiciable. *Id.* In any event, respondent's failure to comply with the procedures set forth in Rule 306(a)(5) and (b) deprives us of jurisdiction over this issue.

¶ 40    Respondent's contention that the trial court failed to timely hold permanency review hearings within the six-month period or more frequently (see 705 ILCS 405/2-28(2) (West 2022)) fails for the same reasons. Respondent did not confer jurisdiction by timely filing a petition for leave to appeal any of the untimely permanency review hearings. Moreover, respondent did not challenge the timeliness of the permanency review hearings in the trial court thereby forfeiting the timeliness issue on review. *Greater New York Mutual Insurance Co. v. Galena at Wildspring Condominium Ass'n*, 2022 IL App (2d) 210394, ¶ 27. Finally, we note that respondent does not identify any prejudice accruing from the purportedly untimely permanency review hearings. Where a party does not demonstrate prejudice, error will not lie. *DiCosolo v. Janssen Pharmaceuticals, Inc.*, 2011 IL App (1st) 093562, ¶ 40.

¶ 41    Accordingly, because respondent did not follow the requirements to perfect her appeals of the permanency orders or the timeliness of the permanency review hearings, we lack jurisdiction over these issues and dismiss them. *Shatku v. Wal-Mart Stores, Inc.*, 2013 IL App (2d)

120412, ¶ 19 (untimely notice of appeal results in lack of jurisdiction requiring dismissal of the appeal).

¶ 42                    B. Respondent's Motion to Represent Herself

¶ 43    Respondent argues that the trial court erred by denying her motion to represent herself at the best interests hearing, and thus, the cause must be remanded to allow the proper inquiry into her desire to proceed on her own behalf and for any other proceedings necessary. We disagree.

¶ 44    As a preliminary matter, we accept, for purposes of this argument, that the trial court erred in denying respondent's motion to represent herself. This concession removes the underbrush from respondent's contention and allows us to focus on the primary point of her claim on appeal: that the case must be remanded to the point at which she made her request to represent herself to allow the trial court to properly consider that request.

¶ 45    Respondent first argues that she has a constitutional right to represent herself in termination proceedings. Yet respondent purports to establish this right by citing to criminal cases. See, *e.g.*, *People v. Baez*, 241 Ill. 2d 44, 115 (2011) ("A defendant has a constitutional right to represent himself."). Respondent completely elides the fact that any right to counsel in termination proceedings is statutory, not constitutional. *In re S.P.*, 2019 IL App (3d) 180476, ¶ 41 ("there is no constitutional right to counsel in proceedings under the Act," but a parent "has a statutory right to be represented by counsel"). Indeed, "the right of a party to counsel in a civil case is quite divergent from the right of defendant in a criminal prosecution." *Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.*, 61 Ill. App. 3d 636, 647 (1978). For example, in contempt proceedings, the difference between whether the proceeding is for civil contempt or criminal contempt profoundly influences the type of procedural safeguards to be applied. In civil contempt proceedings, the party is entitled to minimal due process (notice and an opportunity to be heard), while in criminal contempt proceedings, the entire panoply of constitutional rights is afforded

(including notice, opportunity to be heard, right to counsel, right to be proved guilty beyond a reasonable doubt). *In re Marriage of Betts*, 200 Ill. App. 3d 26, 52-53 (1990). Thus, any right to counsel in a termination proceeding is bestowed by the Act (705 ILCS 405/1-5(1) (West 2022)), not by the constitution. *S.P.*, 2019 IL App (3d) 180476, ¶ 41.

¶ 46    In turn, this statutory derivation of the right to counsel has implications for any right to self-representation. We agree that respondent has a right to represent herself in termination proceedings. *In re Abel C.*, 2013 IL App (2d) 130263, ¶ 18. The question, however, is not whether respondent may represent herself, but what happens if respondent is erroneously deprived of that right of self-representation.

¶ 47    Respondent does not analyze the question her argument actually presents, namely, the question of appropriate relief. Instead, she focuses on establishing an erroneous deprivation of her right of self-representation, and leaps to the conclusion, without justification, argument, or citation to appropriate authority, that any erroneous deprivation results in reversible error. While establishing error is a necessary starting point to demonstrate reversible error, respondent does not explain how she journeys from the starting point of error to the conclusion of reversible error, instead trusting that we will convert her conclusory leap into a leap of faith over whatever unstated premises are required to reach the destination of reversible error. Respondent's failure to explain *how* she reaches the conclusion of reversible error constitutes a classic forfeiture of the issue. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited"). Forfeiture, however, is a limitation on the parties, not the reviewing court, and we may overlook a forfeiture to fulfill our obligation to achieve a just result and maintain a uniform body of precedent. *Sandberg v. Brian B.*, 2018 IL App (2d) 180082, ¶ 25. Here, because the issue of appropriate relief for an error involving such an important right as that of self-representation (see *Abel C.*, 2013 IL App (2d) 130263, ¶ 18 (a party's right to self-representation is both as basic and fundamental as the right to

be represented by counsel and is rooting in the bedrock of respect for the individual which provides the lifeblood of the law)) is fundamental to our resolution of this case, we choose to relax the rule of forfeiture.

¶ 48    For its part, the State, while not conceding that the trial court's denial of respondent's motion to represent herself constituted error, argues that we must first determine whether respondent was prejudiced by any erroneous deprivation of the right to self-representation. We agree with the State.

¶ 49    In *S.P.*, the respondent's counsel was improperly discharged from representing the respondent but was later reappointed, and the respondent had representation as guaranteed under the Act. *S.P.*, 2019 IL App (3d) 180476, ¶¶ 43-44. The reviewing court held that the erroneous deprivation of the respondent's right to counsel was a reviewable error, and any error accruing from the erroneous deprivation was harmless. *Id.* *S.P.* thus suggests that, if the complete and erroneous deprivation of the statutory right to representation may be deemed harmless error, then the erroneous deprivation of the right of self-representation arising under the same statute must be subject to the same sort of analysis. This is because the right of representation and the right of self-representation are the two sides of the same coin. *Abel C.*, 2013 IL App (2d) 130263, ¶ 18 (the right to counsel implies the correlative right to proceed without counsel). Accordingly, we reject respondent's assumption (supported by neither argument nor authority) that the trial court's erroneous refusal to properly consider her motion to represent herself automatically returns this case to the trial court at that point of the proceedings.

¶ 50    Instead, we consider whether respondent was prejudiced by the erroneous deprivation of her right of self-representation. Respondent premised her request to represent herself on her belief that her counsel was not introducing certain exhibits and information showing that she had made progress in her assigned services. At the best-interests hearing, which was the next hearing

following the denial of respondent's motion to represent herself, counsel introduced the records and information respondent wished to show the court. The court thoroughly considered those exhibits as demonstrating how she interacted with and cared for the children before their removal and as demonstrating the progress she had made in her parenting skills and the awareness of her own issues and limitations. Because the very information that respondent sought to present if she represented herself was presented by counsel and considered by the court, we cannot say that respondent was prejudiced by the court's denial of her request to represent herself.

¶ 51 Further, there is no reasonable probability that the outcome of the best-interests hearing would have been different had respondent represented herself. *In re Brandon P.*, 2014 IL 116653, ¶ 50 (generally, even errors of constitutional dimension are harmless where there is no reasonable probability that the outcome of the proceeding would have been different absent the error). The information and records dealt with respondent's engagement and progress in the recommended services and were considered by the court as illuminating respondent's abilities to care for the minors. Thus, the evidence was only tangential to the best-interest hearing, but the court considered the evidence insofar as it bore on respondent's parenting abilities and how her growth in those abilities affected the minors' best interests. Accordingly, there is no reasonable probability that the outcome of the best-interests hearing and the ultimate issue of the termination of parental rights would have been different had the trial court properly (for purposes of argument) considered respondent's request to represent herself.

¶ 52                                    III. CONCLUSION

¶ 53 For the foregoing reasons, the issues regarding the permanency review hearings and orders are dismissed, and we affirm in part the judgment of the circuit court of De Kalb County terminating respondent's parental rights.

¶ 54 Appeal dismissed in part and affirmed in part.